(93 Misc. Rep. 41)

## LYON v. BARRETT.

(Supreme Court, Appellate Term, First Department.   December 30, 1915.)

1. CARRIERS ⊜⇒90—CARRIAGE OF GOODS—NEGLIGENCE.
    Where an express company, which received a diamond ring consigned C. O. D., with instructions directing the carrier to allow an examination of the contents before payment, allowed one who represented himself as

the consignee, and had visited the office before the ring was received, to examine it at a broad counter, where he was watched, not only by the clerk in whose charge the ring was, but by two other clerks, the company was not guilty of negligence, though the clerk in charge of the ring had to turn away for a few moments, and no recovery can be had, acceptance being refused, though a spurious stone was substituted.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 331–337; Dec. Dig. ☞90.]

**2. CARRIERS ☞90—CARRIAGE OF GOODS—DELAY.**

Where, after a consignee failed to accept a diamond ring sent C. O. D., the consignor directed its return, a delay of nearly a month, due to the routine of express offices, as shown by the correspondence, is not proof of negligence; the ring remaining sealed and in the express safe during the interim.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 331–337; Dec. Dig. ☞90.]

**3. CARRIERS ☞94—CARRIAGE OF GOODS—LOSS.**

Where a diamond ring was delivered to an express company for carriage C. O. D., and when returned to the consignor, the consignee, after inspection, having refused to accept it, it was found that a spurious diamond had been substituted, the presumption of negligence, which places on the carrier the burden of explaining a loss, is rebutted, where the express company fully accounted for its acts during carriage and inspection in such a manner as to rebut any inference of negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 367–395, 456; Dec. Dig. ☞94.]

Appeal from Municipal Court, Borough of Manhattan, Ninth District.

Action by Julius M. Lyon against William M. Barrett, as President of the Adams Express Company, an unincorporated association consisting of seven or more persons. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Argued December term, 1915, before GUY, PAGE, and PHILBIN, JJ.

Stewart & Shearer, of New York City (Harry K. Davenport, of New York City, of counsel), for appellant.

David B. Baum, of New York City (S. C. Sugarman, of New York City, of counsel), for respondent.

PAGE, J. The record in this action shows that the plaintiff delivered to the defendant company a diamond ring, to be transported to Birmingham, Ala., consigned to one J. A. Gooch, C. O. D. $405, with instructions, printed upon the package, directing the carrier to allow an examination of the contents before payment. The package was carried to its destination, and was there examined by a person who claimed to be the consignee. The alleged consignee stated that he would return with an expert jeweler to determine whether the diamond was genuine. He never called again for it, however, and after due notice had been sent by mail to both shipper and consignee it was returned to the shipper in New York in a sealed package. The shipper inspected the ring in the presence of the defendant's clerk, and declared that an imitation stone had been substitut-

ed for the one which was shipped. He refused to accept the ring tendered by the defendant, and brings this action to recover the value of the diamond, for the failure of the defendant to return it. The defendant placed in evidence a blanket agreement covering future shipments, signed two years prior to the present shipment, whereby the plaintiff agreed with the defendant as follows:

"(1) Whereas, we, the undersigned, intend hereafter to ship by the Adams Express Company packages consigned C. O. D. by us to points on the lines or routes of said express company and also packages consigned C. O. D. by us to points beyond or off the lines or routes of said express company, which packages shall be shipped as ordinary merchandise, but shall also contain watches or other articles of jewelry which under the tariff of rates of said express are carried only at special rates, and shall bear instructions to said express company to allow examination of contents of said packages by consignees before acceptance: Now, in consideration of the said express company now and hereafter accepting such goods shipped as aforesaid, with the privilege of examination, as ordinary merchandise at ordinary merchandise rates, and for one dollar and other valuable considerations to us in hand paid, the receipt whereof is hereby acknowledged, we hereby agree that said express company shall not be liable for any loss, shortage, or damage which shall or may hereafter accrue to us arising out of the loss or misdelivery of or failure to deliver, or damage to any watch or other article of jewelry which may be contained in any of said C. O. D. packages which shall or may be hereafter shipped by us either to points upon or points off the lines or routes of said Adams Express Company."

[1] Assuming, as claimed by the plaintiff, that this agreement did not and could not lawfully operate as a release of any claim for damages to the shipment in suit arising out of the negligence of the defendant, the question to be determined upon this appeal is whether the plaintiff has shown such negligence. The defendant showed by the testimony of the three clerks of the Southern Express Company at Birmingham, Ala., who had the package in charge, that a man claiming to be Gooch, the consignee, inquired for the package the day before it arrived, and called again on the day after its arrival to examine it. The package was then taken out of an iron safe by Vance, the "on-hand clerk" for the Southern Express Company, who was the only man who knew the combination of the safe. Vance handed the package to Atcheson, "assistant on-hand clerk," who waited on the consignee at a broad counter behind which the clerks were employed. Before Vance gave the package to Atcheson, he informed Ould, secretary to the agent of the Southern Express Company at Birmingham that a $400 C. O. D. package was about to be examined, and Vance and Ould stood a few feet away and watched the transaction, while Atcheson waited upon Gooch. Vance was compelled to turn away for a few minutes, but Ould did nothing during the examination of the package by Gooch but watch him closely. Both Ould and Atcheson testified that Gooch pushed the button which sprung the box open and took the ring in two fingers, examined it, said it was a pretty stone, and returned it to the box. He then said he would return later with a jeweler to appraise the stone before he accepted it. Ould and Atcheson both kept their sight fixed upon the ring until it was returned to the box, at which point Vance returned, took the ring and box, and placed them again in the safe, where they remained until, on instructions from

the plaintiff, the package was taken from the safe by Vance, sealed, and returned to the plaintiff by the Adams Express Company. It was tendered to the plaintiff with seal unbroken and in apparent good order.

Upon this uncontradicted evidence the learned trial justice found "as a fact that the defendant was negligent in so permitting an inspection of the jewelry in question that the consignee was enabled to appropriate the genuine and substitute an imitation diamond." I am of the opinion that this finding is unsupported by the evidence. The defendant was compelled by the terms of its contract with the plaintiff to allow the consignee to inspect the ring before delivery. Just what precaution it or its clerks or agents could have taken to prevent substitution, which they did not take, is not apparent. They did not depend upon the vigilance alone of the clerk who waited on the consignee, but two other men stood by and watched the transaction with fixed attention. If the substitution was made, it must have been done by a person so skilled in the art that no amount of vigilance would have detected the trick. Furthermore, the plaintiff testified that the stone was ordered by mail from an advertisement, and was not exactly like the one pictured in the advertisement, but as near to it as he could find for the price offered. It would have been difficult, therefore, for the consignee, Gooch, to have on hand for the purposes of substitution a bogus ring exactly like the one shipped in size, color, and setting, unless he had advance knowledge from New York as to the exact ring which was sent.

[2] There was no evidence of negligence in the defendant or its connecting carrier in keeping the package. The evidence shows that it arrived with unbroken seal at Birmingham, was kept there in an iron safe to which but one trusted clerk had the combination, was sealed again by the said clerk, and returned with unbroken seal to the shipper. The respondent claims that the so-called delay in returning the goods from November 26th, when the shipper gave instructions by mail to return it, until December 22d, when it arrived in New York, was prima facie evidence of negligence. There is nothing to show, however, that this delay in any way contributed to the loss. The ring was in the safe at Birmingham until shipped, after which it arrived in due course. The delay in returning it was merely due to the routine of the express offices, as shown by the correspondence in evidence.

[3] The respondent also relies upon the well-known rule that proof of nondelivery of an article by a carrier or bailee raises a presumption of liability, which places upon the carrier or bailee the burden of explaining its loss. To satisfy this burden the defendant has fully accounted for the package during every moment of time while it was in the custody of the carriers, and under circumstances which rebut negligence. Thereafter the burden was on the plaintiff to establish the defendant's negligence and show that the defendant or its connecting carrier was responsible for the alleged substitution of a spurious diamond for the genuine one which was shipped.

The judgment appealed from should be reversed, and a new trial granted, with $30 costs to the appellant to abide the event. All concur.